UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHESTER and ELLA SHULTZ,

                              Plaintiffs,

         v.                                        7:04-cv-1208

SUNLIFE ASSURANCE COMPANY OF CANADA,
SUNLIFE FINANCIAL GROUP and
THOMAS MOCK,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

## I.      INTRODUCTION

         Plaintiffs Chester and Ella Shultz commenced the instant action against

Defendants seeking to recover benefits under a life insurance policy.  Presently before the

Court is Defendants Sunlife Assurance Company of Canada and Sunlife Financial Group's

(collectively "Defendants") motion for summary judgment pursuant to Fed. R. Civ. P. 56

seeking dismissal of the Complaint in its entirety.

## II.     FACTS

         Plaintiffs were long time employees of Robert Wehle ("Wehle").  On October 10,

1989, Wehle purchased a life insurance policy on his own life.  Wehle was listed as the

owner of the policy.  On March 5, 1990, Wehle had the policy retitled with Plaintiff Chester

Shultz as the owner and Chester and Ella Schultz as the primary beneficiaries.  On May 3,

1990, the policy was again changed such that ownership of the policy was transferred from

Chester Shultz alone to Chester and Ella Shultz jointly and severally.  Premiums for the

subject policy were paid for deposit into a fund that creates an "account value."  The account

value of the policy is used to fund and support the policy's coverage.  Wehle paid premiums

on January 26, 1990 and May 8, 1990.

In September 1990, Defendants sent a bill for the policy to Plaintiffs at their

address.  According to Ella Shultz, she wrote a letter to Defendants' former agent, Thomas

Mock, complaining that the policy was supposed to be paid up.  On September 27, 1990,

Defendants' employee, Thomas Mock, wrote to Plaintiffs as follows:

> I am very sorry for the bill you received from our company.  There are no
> premiums due on your policy as it is paid up.  Please disregard the bill
> and any others you might receive.  I'm in the process of getting all
> correspondence mailed to Mr. Wehle's address.

As a result, Defendants sent annual statements for the period 1989 through and including

2001 to Plaintiffs as follows:

> Chester and Ella Shultz
> C/o R Wehle
> Box 766 Rr 01
> Henderson, NY 13650

Thus, although the statements were addressed to Chester and Ella Shultz, they were mailed

to Wehle's address.[1]

The account value was sufficient to support the policy for numerous years.  In April

2002, however, the account value was insufficient to keep the policy in force.  Accordingly,

on April 10, 2002, Defendants sent a letter addressed to Plaintiffs c/o of Wehle and mailed to

Wehle's address advising that the policy "will cancel unless we receive a payment of $408.02

---

[1] The Shultz's address was Box 762.  Wehle's address was Box 766.

by June 09, 2002." Due to an apparent error by the postal service, the April 10, 2002 was actually delivered to Plaintiffs' mailbox; not that of Wehle. According to Plaintiffs, they gave the notice to Wehle's bookkeeper, James Signor, who advised that Wehle would take care of it. In an affidavit, Signor recalled having a conversation with Ella Shultz regarding the letter, but could not recall ever seeing the letter. Signor further stated that he believed his conversation with Ella Shultz occurred well after Wehle died on July 12, 2002.[2]

Defendants did not receive any further payments on the policy. Defendants did not receive any communications from Plaintiffs or anyone else in response to the cancellation notice. On July 10, 2002, Defendants sent a letter to Plaintiffs (again, addressed to them, but sent in care of Wehle and mailed to Wehle's address) stating that the insurance policy was no longer in effect, but that the policy could be reinstated with payment and proof of insurability. According to Plaintiffs, they never actually received this letter.

Wehle died in July 2002. Plaintiffs made a claim to SunLife for life insurance benefits. The claim was denied on the ground that the policy had lapsed. Plaintiffs then commenced the instant action seeking benefits under the insurance policy. Plaintiffs allege that Defendants breached the contract and that their agent, Mock, negligently misrepresented to Plaintiffs that the policy premiums were paid in full and that they could disregard any future bills.

Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

---

[2] There is a factual dispute concerning when Ella Shultz discussed the cancellation notice with Signor.

III.     **STANDARD OF REVIEW**

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor.  Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002).  However, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998).

**IV.      DISCUSSION**

      **a.      <u>N.Y. Insurance Law § 3211</u>**

In their motion papers, neither party discussed the applicability of N.Y. Insurance Law § 3211.  Section 3211 provides that  "[n]o policy of life insurance . . . delivered or issued for delivery in this state . . . shall terminate or lapse by reason of default in payment of any premium . . . in less than one year after such default, unless a notice shall have been duly mailed at least fifteen and not more than forty-five days prior to the day when such a payment becomes due."  N.Y. Ins. Law § 3211(a)(1) (McKinney 2004).

There is a question of fact whether the policy was issued in New York or Alabama and, thus, whether section 3211 applies here.  The policy was issued out of Defendants' Florida office.  The policy appears to have originally been taken out by Wehle while he was in Alabama.  Wehle, however, appears to have spent time in both Alabama and New York. While Wehle remained the named insured, ownership of the policy was transferred to Plaintiffs who were residents of New York.  On the copy of the policy supplied at Exhibit "B" to the Barrer affidavit, Wehle is listed as the insured, but Chester Shultz is listed as the policy owner.  The policy indicates that the Shultz's resided in New York.  The fact that both parties rely on New York law in connection with the pending motion for summary judgment raises the possibility that the policy is subject to New York law.  There are insufficient facts before the Court upon which this determination can now be made.

If section 3211 applies, there is a question of fact whether Defendants complied with the terms thereof.  For example, Defendants claim that the policy lapsed within one year of the default in payment.  The statute requires that notice be sent "at least fifteen and not more than forty-five days prior to the day when such a payment becomes due."  It is unclear

when such a payment became due.  According to the April 10, 2002 notice, payment had to be received by June 9, 2002.  Looking at the evidence in the light most favorable to Plaintiffs, the Court will assume that this was the payment due date.  April 10, 2002 is more than forty-five days prior to June 9, 2002.  The letter also failed to comport with § 3211(b)(2) which requires that the notice state, among other things, "the place where and the person to whom it is payable."  Thus, under these facts and assuming that § 3211 applies here, the notice does not comply with § 3112(a)(1).

> **b.** **Breach of Contract**

Defendants move to dismiss the breach of contract claim on the ground that they did everything they were obligated to do under the contract.  Plaintiffs respond that Defendants breached the contract by failing to pay the death benefit upon Wehle's death.  Plaintiffs contend that Defendants cannot argue that the policy lapsed because Plaintiffs reasonably relied upon the representations of Defendants' agent, Thomas Mock, that the policy was paid in full and they could disregard any future bills.

To be entitled to equitable estoppel, plaintiff must show that (1) defendants made false representations or concealed material facts, (2) such was done with the intention or expectation that such conduct would be acted upon by her; and (3) defendants had actual or constructive knowledge of the true facts.  Griesemer v. Bourst, 141 A.D.2d 919, 920 (3d Dep't 1988); see also Readco v. Marine Midland Bank, 81 F.3d 295, 301-02 (2d Cir. 1996).  The party asserting estoppel must also show: (4) lack of knowledge of the true facts; (5) reliance upon the conduct of the party estopped; and (6) a prejudicial change in his position.  Readco, 81 F.3d at 301-02.

In this case, Defendants' employee and agent, Thomas Mock, sent Plaintiffs a letter stating that "[t]here are no premiums due on your policy as it is paid up.  Please disregard the bill and any others you might receive."  While the statement that the premiums had all been paid may have been true at the time Mock wrote the letter, in light of the fact that future premiums could become due and owing under the policy (as actually happened here), the statement that Plaintiffs should disregard any other bills they might receive was false.  In fact, there remained the possibility that premiums could become due and owing and, therefore, future bills should not be disregarded.  Thus, a jury could find that the first element is satisfied.

Turning to the second element and looking at the evidence in the light most favorable to Plaintiffs, a jury could reasonably conclude that Mock expected Plaintiffs to rely upon his advice that the premiums were paid in full and that they disregard any future bills.

A jury could also find that the third element weighs in favor of Plaintiffs.  A jury could reasonably conclude that Defendants knew, or reasonably should have known that premiums could become due on the policy at some point in the future and that Plaintiffs, as the policy owners, would have to pay those premiums.

The fourth element (whether Plaintiffs had knowledge of the true facts) presents a primary point of contention in this case.  Plaintiffs contend that, in light of Mock's letter, they had no reason to consider the April 10, 2002 notice that the policy was about to lapse. Defendants counter, however, that the April 10, 2002 notice was more than eleven years after Mock's letter, Plaintiffs actually saw the April 10, 2002 notice, and they failed to reasonably investigate the true facts.  Whether Plaintiffs knew, or reasonably should have known, the true facts presents a classic issue of fact for the jury.

A jury could reasonably conclude that the fifth and sixth elements are satisfied because, although Plaintiffs did not entirely ignore the April 10, 2002 notice, they did not make a payment on the policy.  The failure to pay can be found to have prejudiced Plaintiffs because it caused the policy to lapse.

For the foregoing reasons, the Court finds that there are triable issues of fact whether Defendants are estopped from claiming that the policy lapsed.  Accordingly, the motion to dismiss the breach of contract claim is DENIED.

### c.        Negligent Misrepresentation

Defendants move to dismiss the negligent misrepresentation claim on the grounds that there is no special relationship between Plaintiffs and Defendants and Plaintiffs remedy relies in breach of contract; not in tort.  "Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).  Because Defendants only challenge the first element and fifth elements, the Court will limit its discussion to those elements.

The requisite "special relationship" for a negligent misrepresentation claim arises when there is a duty of care between the parties.  A duty of care may arise when "there is actual privity of contract between the parties or a relationship so close as to approach that of privity," Ossining Union Free School District v. Anderson LaRocca Anderson, 73 N.Y.2d 417,

541 N.Y.S.2d 335, 338 (1989), or if the defendant has fiduciary obligations to the plaintiff, Stewart v. Jackson & Nash, 976 F.2d 86, 90 (2d Cir. 1992).  A relationship is considered "so close as to approach that of privity" when the following criteria are met: 1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; 2) a known party or parties rely on this statement in furtherance of that purpose; and 3) there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance.  Ossining Union, 541 N.Y.S.2d at 339 (citing Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435 (1985)).  "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003) (quoting Kimmell v. Schaefer, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450, 454 (1996)).  "[W]hether a special relationship exists between two parties is an issue of fact, to be governed by the weighing of three factors: In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001).

        A jury could reasonably conclude that Plaintiffs can satisfy the "special relationship" requirement here.  First, there may be actual privity of contract between the parties.  Plaintiffs were the owners of a life insurance policy issued by Defendants.  Second, a jury could reasonably find that Defendants' agent, Mock, had unique or special expertise regarding the

life insurance policy, that there was a relationship of trust or confidence between Plaintiffs and Mock and/or Defendants, and that Mock (who acted on behalf of Defendants) was aware of the use to which the information would be put and supplied it for that purpose.  Although, ordinarily, insurance agents have been held not to have a special relationship with the insured, see, e.g., W. Joseph McPhillips, Inc. v. Ellis, 8 A.D.3d 782, 778 N.Y.S.2d 541 (3d Dep't 2004), that line of cases involves the situation where the agent is sued for failing to obtain, or advise the insured to obtain, sufficient coverage.  This case is different for several reasons.  Mock was not an independent agent; rather, he was an employee of Defendants. Further, Defendants are not being sued for failure to advise Plaintiffs to obtain sufficient coverage, but are sued for factual statements made by their agent, Mock, concerning the policy at issue here (i.e. whether the policy was paid in full and whether future bills could be disregarded).  Accordingly, the Court finds that triable issues of fact remain on whether there is a special relationship sufficient to sustain a claim for negligent misrepresentation.

The issue of whether Plaintiffs reasonably relied on Mock's representations also presents a triable issue of fact.  A jury will have to decide whether, among other things, Plaintiffs' receipt of the April 10, 2002 notice created an obligation upon them to investigate the true facts or whether they were justified in continuing to rely on Mock's September 1990 letter.  While prudence would have dictated that Plaintiffs investigate the matter, it cannot be said that no fair-minded trier of fact could conclude that Plaintiffs acted reasonably.  There are triable issues of fact relating to this matter, including, but not limited to, whether Plaintiffs knew they were the owners of the policy (rather than just beneficiaries) and, therefore, may have been entitled to have notices pertaining to their policy addressed to them at their own address; whether Plaintiffs were sufficiently aware of their rights in the policy such that they

had an obligation to further investigate the April 10, 2002 notice; or whether Plaintiffs knew or had reason to know that the April 10, 2002 notice pertained to the life insurance policy of which they were owners or beneficiaries (Wehle could have had multiple life insurance policies), etc.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in its entirety.

IT IS SO ORDERED.

Dated: March 16, 2006

Thomas J. McAvoy
Senior, U.S. District Judge